```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA
```

STACIE A. NEAL,                )
                               )
        Plaintiff,             )
                               )
v.                             )    Case No. CIV-13-064-RAW-KEW
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social         )
Security Administration,       )
                               )
        Defendant.             )

## REPORT AND RECOMMENDATION

Plaintiff Stacie A. Neal (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on July 5, 1969 and was 42 years old at the time of the ALJ's decision.  Claimant completed her high school education.  Claimant has worked in the past as a nursing assistant, assembler, security guard, and front desk clerk.  Claimant alleges an inability to work beginning July 20, 2010 due to limitations resulting from a right knee disorder, depression, and a right leg disorder.

**Procedural History**

On September 10, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On November 16, 2011, an administrative hearing was held before Administrative Law Judge ("ALJ") Osly F. Deramus in McAlester, Oklahoma. On January 31, 2012, the ALJ issued an unfavorable decision on Claimant's applications. The Appeals Council denied review of the ALJ's decision on January 7, 2013. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary work.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) assessing Claimant's credibility; and (2) failing to properly consider all of

Claimant's limitations.

**Credibility Determination**

In his decision, the ALJ determined Claimant suffered from the severe impairments of right knee degenerative joint disease, and depression. (Tr. 11). He also found Claimant retained the RFC to perform a full range of work at the sedentary level except that she could only occasionally stoop, never crouch, crawl, or kneel, occasionally climb stairs but never climb ladders. (Tr. 14). Due to psychologically based factors, the ALJ also determined Claimant could perform simple and some complex tasks, could relate to others on a superficial basis, and could adapt to a work situation. Id. After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of touch-up screener and polisher. The ALJ found these jobs existed in the national and state economies existed in sufficient numbers. (Tr. 21).

Claimant first contends the ALJ improperly assessed her credibility in light of the medical record. The ALJ found that the medical record did not support the extent of Claimant's limitations to which she testified at the administrative hearing. (Tr. 15). He found Claimant had testified to eleven procedures performed on her right knee but that the medical record only supported the fact that two such procedures were performed. (Tr. 15). On January 13,

5

2011, Claimant was evaluated by Dr. J. Marks-Snelling. He found Claimant had an x-ray of her right knee done at Sparks Medical Center in July of 2010 which showed normal alignment of the bones and no fractures. He also acknowledged the consultative examination performed by Dr. Taylor in December of 2010 which was within normal limits. Dr. Marks-Snelling found Claimant to have full range of motion throughout and 5/5 strength throughout. Claimant was positive for a muscular tumor above the right knee and had scars around the knee. Dr. Taylor had diagnosed degenerative joint disease in Claimant's right knee. Claimant showed negative straight leg raising and her heel/toe walking was normal. Dr. Marks-Snelling concluded Claimant's physical condition was non-severe. (Tr. 315).

On March 29, 2011, Claimant was also evaluated by Dr. James Metcalf. Dr. Metcalf confirmed Dr. Marks-Snelling's diagnosis and assessment of Claimant's limitations. (Tr. 349).

The ALJ reviewed the medical record, noting that as late as August 31, 2011, Claimant reported her knee felt a lot better after undergoing arthroscopy on July 29, 2011. (Tr. 16). On September 14, 2011, Claimant requested kenesio tape and reported improvement on her pain. She continued physical therapy and met her goals. (Tr. 16).

Claimant's credibility in regard to the limitations caused by her depression was also challenged by the ALJ. On December 29, 2010, Claimant was evaluated by Dr. Carolyn Goodrich, who completed a Mental Residual Functional Capacity Assessment form. Dr. Goodrich found Claimant was moderately limited in the areas of the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public. (Tr. 311-12). She concluded Claimant could perform simple and some complex tasks, could relate to others on a superficial work basis, and could adapt to a work situation. (Tr. 313).

On November 30, 2010, Claimant underwent a Mental Diagnostic Evaluation by Dr. Patricia J. Walz. As a part of that evaluation, Claimant told Dr. Walz that "[s]he needs no assistance with her activities of daily living." (Tr. 285).

Claimant testified her depression began in July of 2010 "because she can no longer do what she once did." (Tr. 15). She stated she cries and stays in bed, needs reminders to take showers, and takes Lexapro to treat her depressive symptoms. Id. The ALJ found Claimant's activities of daily living were only moderately restricted. (Tr. 13).

It is well-established that "findings as to credibility should

be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. Claimant contends without specificity that the ALJ failed to properly examine each of these factors in assessing her credibility. In so doing, Claimant makes it difficult for this Court to ascertain the

particular error in the assessment which she urges. Claimant merely states the ALJ failed to examine all seven of the Kepler factors in his decision. An ALJ is required to do more than "simply recite [ ] the general factors he considered ... [without] refer[ring] to any specific evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). But the Tenth Circuit's "opinion in Kepler does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of Kepler are satisfied." Id.

The ALJ's analysis of Claimant's credibility was not erroneous. He affirmatively linked his challenge to credibility with the medical evidence as required by Kepler. The objective record does not support the extent of limitation to which Claimant testified.

**Claimant's Limitations**

Claimant also contends the ALJ failed to consider the totality of her limitations in formulating his RFC. Claimant also argues these additional limitations should have been included in the hypothetical questioning of the vocational expert. Specifically, Claimant testified that she could sit no more than 15-20 minutes at a time, could stand a maximum of 5 minutes at a time, and required

9

unscheduled breaks during her work shift due to poor sleep and a need for naps. (Tr. 36, 39).

Again, the ALJ found Claimant to be less than credible with regard to the extent of her limitations. The medical record does not support the restrictions in her functioning as alleged by Claimant in her testimony. Claimant does not cite to the medical record or any evaluator's functional assessment to support this challenged testimony. The ALJ did not err in failing to include these additional limitations in either his RFC assessment or his questioning of the vocational expert.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 28th day of February, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE